The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. I'm not presiding. Judge Wilkinson is presiding, and so I don't want to be a pretender. Please be seated. And Mr. Thompson, we'd be delighted to hear from you whenever you're ready. May it please the Court. My name is Jeremy Thompson. I am here on behalf of the appellant, Quintin Davis. The District Court committed several errors, excluding evidence, determining which charges to send to the jury, to sentencing Mr. Davis as a career offender. Given the number of issues presented and the time allotted, I'm going to focus my argument primarily on the lesser included jury instruction and career offender arguments this morning. Beginning with the lesser included offense, this Court in Smith held that a District Court must weigh the evidence when determining whether to give an instruction on a lesser included offense of simple possession. The District Court did not do that in this case. The District Court had two opportunities to do so. At Joint Appendix 241 and then again at 249, the District Court held that because the offense of possession with intent to distribute had been charged, it had to follow up on that charge and give that charge only. That is clear error under Smith. The government, in its brief, did not seek to defend really the legal reasoning of that ruling. Instead, the government sought to rely on this Court's holdings or statements in Wright that considerable affirmative evidence of only simple possession had to be presented. In Smith, you want a lesser included offense instruction? Yes. In Smith, we said that whether to give that kind of an instruction is plainly within the discretion of the District Court. Looking at the evidence here, it seemed that a lot of the evidence went to possession with intent to distribute rather than simple possession. There wasn't much evidence that indicated simple possession. Well, Your Honor, it is difficult to establish simple possession given the usual factors this Court looks to. For example, evidence of personal use. You look to things like whether someone has crack pipes or something along those lines or needles for heroin. Pills are different. In order to take a pill, the only thing that you need is a glass of water. So a defendant is not likely to have the similar things. You're moving away from the evidence in this case. He was carrying three baggies with different colored pills in each baggie and more than $500 in cash and mostly $20 and $50 bills. He had a firearm within reach when he was driving with the drugs and the cash. And it just doesn't seem, it seems to me that a District Court would have the discretion to look at all this evidence and saying there's a lot of evidence that goes to distribution and nothing that goes to mere possession. And so you don't give a lesser offended, lesser included offense in that situation unless you have some fairly cogent evidence that this is purely a possessory offense. And I can't see people driving around with $500 in cash and three baggies with different colored pills in each baggie. He was the only driver of the car. He had a firearm while he was driving with drugs and cash, which a lot of distributors carry. And I just didn't see any evidence that these drugs were for personal use. And I saw a good deal of evidence that indicated that the drugs were for sale. And so I'm just hard pressed to see why there was an abuse of discretion not to give a lesser included offense instruction. The District Court has a closer view of this trial than we do. Yes, Your Honor, but the District Court did not weigh the evidence. The District Court did not conduct the analysis that Your Honor is conducting with regard to the evidence of the elements of distribution or the evidence of personal use. The District Court conducted nothing along those lines. What kind of illnesses could the drugs that he possessed have been used for? Well, there is evidence in the record that he had arthritis. And what were the drugs he had? He had oxycodone. Was that used for arthritis, I guess? Yes, he could have taken that absolutely for arthritis. For pain? Yes, for pain. He also had fentanyl. He had fentanyl, but it was scored as oxycodone. Well, I understand that, but he had fentanyl. And he had the bags labeled. One of the labels was incorrect, apparently. And there's nothing suggesting that he was taking medicine for his pain. Well, that is the inference you can draw, is that he was taking medicine for his pain. Is that your best argument, that he might have had it for personal use because he had ailments? If you're looking for the right standard of affirmative evidence that the defendant presented, yes. I believe you can still draw other inferences from the evidence that the government presented. Well, he had this firearm stuck down between his seat. And, of course, we've got a lot of cases about the connection between firearms and drug distribution. I mean, drug dealers don't want to be handling a bunch of cash and a whole lot of drugs unless there are any. That runs against you. Yes, but he could have had the firearm for protection, assuming, of course, that he knew that the firearm was in the vehicle and that he knowingly possessed the firearm in connection with the drug. But the testimony— Well, but that would go to distribution. If you have the firearm for protection, I mean, a firearm is very often go with distribution. Drug dealers carry that all the time in order to protect themselves in a drug deal. And you say that the trial judge didn't weigh the evidence, but the trial judge was the one that sat through the trial and was looking at it. And, you know, I just don't see—with three baggies with different colored bags and $500 in cash and $20 and $50 bills, that's a distributor, my friend. That's a distributor. Come again? Your Honor, respectfully, unless he had gone to the club to purchase the drugs, someone who goes to purchase drugs is going to do so in cash. Why would he purchase them if he had them? He purchased them at the club before he was arrested. He had just been to the club. He could have met his distributor at the club. Then he wouldn't have the cash because he would have spent the cash. But he might not have bought everything. He might have brought extra with him. He didn't know exactly how much he was going to get. Sometimes your distributors do not have everything you expect to get. He was also at a club. So he goes to the distributor. Normally, the cases we have is a person goes up and buys an immediate need of drugs. That will carry them for the next day or two and doesn't have a lot of cash lying around. They're not armed. They go up, basically. They're supplicants. They're purchasers, a person who has it for use. But this man had three baggies. Now, does he go to a person for personal use and buy three baggies labeled and color-coded and with three different drugs? Why would he have three different drugs for personal use? If he thought they were all oxycodone, I don't know why his distributor gave him those drugs in that manner. Again, the fact that one of them was fentanyl, there's no evidence that he knew it was fentanyl, that he knew that it had been coded. All he knew at the time was that it had been stamped and marked oxycodone. But his girlfriend took the stand and never testified that he took any medicine to relieve the pain or whatever. I mean, that wasn't even really followed through at trial. Honestly, we really can't. District courts do play a role in our system, and this is classic district court stuff, to decide whether to give a lesser-included offense. And to say that a district court abused its discretion in the face of this sort of evidence, where the evidence, it seems to me, is a matter of plain common sense, goes to distribution and not to possession, it almost makes us look silly. Well, Your Honor, obviously I respectfully disagree with that. But I see I'm running low on time, so I did want to move to the sentencing issue with regard to whether or not South Carolina distribution offenses are controlled substance offenses under the sentencing guidelines, as interpreted by this court's decision in Campbell. What about the Groves decision? It has not been released yet, is my understanding, Your Honor. So it is forthcoming. Do we hold this in abeyance pending Groves? I do not believe so. But the government, I believe, made some suggestion about that in their Rule 28J letter. That's what I was asking. Is Groves likely to be of assistance when it comes down? I don't believe so, Your Honor. I think if anything, I suppose if Groves holds that 841 distribution is not a controlled substance offense, categorically, then I think that would make this even an easier question. But the question of whether 841 distribution is a controlled substance offense has no bearing on whether South Carolina distribution is a controlled substance offense. Because South Carolina law is clear that an attempted delivery is a distribution. So categorically, distribution under South Carolina law is an inchoate offense. And that is what the South Carolina Court of Appeals held in State v. Brown. So regardless of what this court holds in Groves regarding 841 distribution, South Carolina law is clearly distinguishable from federal distribution. But not necessarily, is it? I mean, you've got the Sixth and the Eighth Circuit saying that an attempted transfer is a completed delivery. And I don't understand why that would necessarily change over because this is South Carolina law. It seems to me we're making things pretty complicated. We're talking about career offender status here. And as I understand it, your client has six or ten drug distribution offense convictions? There are many, yes. Again, if you have ten drug distribution convictions and we're saying there's no predicate? I mean, I don't get it. Again, as a matter of common sense, I don't see how that can be in absence of a career offender predicate when someone has ten drug distribution offenses. Now, we can split hairs about this, but at any rate, would it be useful, do you think, to hold for Groves? I do not believe so, Your Honor. Respectfully, I think many in this room might agree that I don't know how much common sense has played into categorical approach decisions and crimes of violence and controlled substance offenses in the last, say, 30 years or so since the Supreme Court decided Taylor. But the difference between South Carolina distribution in the Sixth and Eighth Circuits, especially the Sixth Circuit in particular, from Havis to Miller, the Sixth Circuit held that there was no indication under any relevant law, Tennessee, Michigan, what have you, and I see that I'm running out of time, if I may finish this thought. Yeah, please finish your thought. That there was no indication under the relevant state law that attempts were prosecuted, that an attempt to transfer was interpreted coterminously with attempts to deliver. It looks like the South Carolina law does the same thing. It says deliver or delivery means actual constructive or attempted transfer of a controlled substance. That's from South Carolina law. Yes, that is from South Carolina law, but the Court of Appeals' decision in Brown says that an attempt to transfer is an attempt to deliver. Well, the statute says deliver or delivery means attempted transfer. Yes, but then the Court of Appeals interpreted that provision to mean that it is an attempt to deliver. You're talking about the Court of Appeals for South Carolina. Yes, correct. Is that the high court in South Carolina? It is not the highest court, but this court looks to the intermediate court when there's no precedent from the highest court, and there is no Supreme Court decision on point. The Court of Appeals' decision is the only thing that we have, and as I mentioned in my supplemental reply brief, there is no evidence that South Carolina prosecutes attempted distributions or attempted deliveries. They are prosecuted as substantive distributions. Attempt crimes are prosecuted as substantive distributions. And with that, I think I'll reserve the rest of my time. All right, thank you. Mr. Holloway? Yes, sir, Your Honor. Good morning. I'm Justin Holloway on behalf of the United States. I am asking this court to affirm the jury's verdict and the trial court or the district court's rulings. Your Honors, my opponent has focused primarily on his argument regarding the lesser-included offense, which was Issue 2, and the Campbell argument, which is Issue 4. I'll direct my response to that and be happy to answer any questions the court may have. Certainly. Your Honors, the one thing I really want to point out as to the evidence in the lesser-included offense, it seemed that opponent's counsel was trying to make some hay when he said that the drugs could have been purchased at the strip club that night. And a reminder to the court, this happened on a Tuesday going into a Wednesday morning. He was pulled over at approximately 343 in the morning on March 21, 2018. He had $509 on his person. There was four $50 bills, 14 $20 bills, one $10 bill, three fives, and four ones. Those drug dealers are carrying a lot more money than that, though. Sir, they can. In Dillon, South Carolina, Your Honor, that's probably a good chunk of change. And, Your Honor, there's a witness testified for the government that each one of those bills was going to cost approximately $20 to $30. Your Honor, he was in possession of 25 bills. So we're talking about in excess of $1,000 in value between the pills and the money that was in his pocket. I think it's also illustrative that the money was in the same pocket as the pills, and he was carrying a wallet on him. And there was no evidence, as this court pointed out, Ms. Manning, who testified that the defendant had arthritis, the same defendant who also ran from law enforcement that night at 343 in the morning, there was no evidence that he actually had purchased the pills. She did not testify that he purchased those pills at the strip club. She didn't testify that he used those pills. And the purpose of the stop initially was because deputy cops thought that Mr. Davis was under the influence. They actually called out the South Carolina Highway Patrol, who does the vast majority of DUI investigations in South Carolina, especially in rural counties like Dillon. And the highway patrolman, the trooper, determined that Mr. Davis was not under the influence that night. So there is no evidence on the record that Mr. Davis had actually used pills. And I think this court could take judicial notice of the fact that if somebody was using fentanyl or oxycodone, that they would demonstrate some indicia of being under the influence. As we continue to go through this issue, some of the things that I was mindful of, and I was taking notes, Your Honors, are looking at the quantity of the drugs and the dosage units. So we had 25 pills here, which Mr. Thompson tries to make some hay on in his original motion, but 13 of those were fentanyl. The DEA issued a report in 2021 showing that two milligrams of fentanyl can be a lethal dosage. That means he had over 500 lethal dosages of fentanyl, which is a significant amount. I think it's also important to look at the nature and circumstances of this. Judge Wilkinson, you pointed out that Mr. Davis was in possession of a firearm. This court has held numerous times, specifically in Watts, that firearms are tools of the drug trade. This was also a stolen firearm. This was also a stolen firearm, and Mr. Davis was a convicted felon. He had four prior convictions for distribution of crack cocaine, two prior convictions for distribution of cocaine. So well aware of his felon status. And Lomax, this court in Lomax talked about- Did that come out at trial, the fact that he was a felon and had all of the previous drug distribution convictions? Excuse me, Your Honor, could you please repeat that question? What you just went over, did that come out at trial? Your Honor, the jury actually- I apologize. The jury actually convicted Mr. Davis of a 922-G offense, and that was vacated by the district court at sentencing because the sentencing hearing was after the Supreme Court's decision in Rahafe, and then after this court's decision in Gary, but before the Supreme Court's decision in Greer. So the district court was basing its decision on this court's decision in Gary. That case, that charge is not before us. No, sir, Your Honor, because that decision was vacated. The government did not do a cross appeal on that. There's a firearm offense that's on the case. Yes, sir, Your Honor, the 924-C, which was issue one. But I guess I say that to answer Judge Wilkinson's question, and I apologize for my voice, that the defendant stipulated his criminal history to being prohibited. So it was not before the jury that he had six drug distribution convictions. Thank you, Your Honor, I appreciate your grace. The point we tried to make in Smith was that you've got to give district- you've got to have some respect for the fact that the district court was the one that was sitting through the trial and was looking at this evidence and looking at its cumulative force. And if we reverse here, with facts as condemning as these, and with so much of the evidence, not just any one piece of it, but a cumulative force of it goes to distribution and not to possession, it would be tantamount really to saying that there is no district court discretion at all. You have to do this in every single case. And that's not where the precedent goes, either in this circuit or anywhere else. Yes, sir, Your Honor, I think that this court- Your Honor's opinion in Smith was very instructive. One, it talked about how this court's opinions in Baker, in Levi, and in Wright can be read together, which is important. The one thing I will point out is that Smith also said that any expansive reading in Wright, that it was the defendant's requirement to produce affirmative evidence of personal use to merit the lesser included, is no longer a standard. That is not a standard. However, Smith was very clear that there still needs to be a substantial basis for an inference of personal use before requiring an extraction on a lesser included. And that basis, Your Honors, would lead to either sharply conflicting testimony on the element of intent to distribute, which we do not have, or it would be the conclusion on the lesser included may be fairly inferred from the evidence presented. And as Your Honors have said time and again this morning, three baggies, color-coded, over $500 in cash, fentanyl, stolen firearm by a felon, no evidence of use, no evidence that he purchased that at the strip club. All of the evidence... Was the fact that it was a stolen firearm put in evidence? Your Honor, it was. We actually had a witness from Augusta, Georgia, who owned that gun, testified that his gun had been stolen. So that was in evidence, Your Honor. The fact that it was stolen nature of it was in evidence. Yes, sir, Your Honor. There wasn't any testimony that these drugs were for personal use, was there? No, sir, Your Honor. The only testimony was from Ms. Manning, who said that the defendant had arthritis. There were no prescriptions in evidence, no medical records, and no one testified. She did not testify that he took any medicine to relieve the pain. That's correct, Your Honor. There was no evidence, no testimony that these were personal use. They didn't try to put on a case. That is correct, Your Honor. There is no evidence of personal use, and there is no testimony of personal use. If the court... If my colleagues have any questions on that, we can wait. Otherwise, I would like to hear your thoughts on the sentencing issue. Yes, sir, Your Honor. The Campbell issue, the standard review here is de novo. Your Honor, this court has already determined in furlough with Judge King authoring the opinion that distribution of a controlled substance in South Carolina is a categorical match for a controlled substance offense under 4B1.2. Campbell does not disturb this court's holding in furlough. Campbell held that an inchoate offense is not a controlled substance offense. Campbell held that an attempt crime is not a controlled substance offense. This, what the defendant has been convicted of, six charges of distribution in South Carolina are not inchoates. The parties in Campbell, the government and Mr. Campbell, agreed that the least culpable conduct in the West Virginia statute was attempt. The parties mistakenly did the same thing in the first Havis case in the Sixth Circuit, and it wasn't until the second Havis case that now Chief Judge Sutton pointed out that the parties could have been mistaken, that there is a difference between an attempt crime in 846 and an attempt to transfer in 841. And I believe, as this court's opinion is still pending in the Groves case, that the Groves case will, in fact, be instructed. But I think that this court can make this decision based on what's in front of us, given the fact that the holding in furlough is good and is strong. The court has also held the same in Buckman, which was another South Carolina distribution case. Furlough was based on an unpublished opinion in Marshall, interpreting possession with intent to distribute. In Campbell, the panel was looking at that statute with an agreement of the parties that attempt was the least culpable conduct. And then they engaged, this court engaged, in the categorical approach. That's not the case in South Carolina, Your Honors. This court has already determined that the South Carolina drug statutes in 375B are divisible. Possession with intent to distribute. Distribution. Manufacturing. Purchase. Attempt. Conspiracy. Plus, really, the primary indication of being divisible is different penalties. And 4453.420 shows the penalty for attempt and conspiracy being half that of the other effects. So it shows that South Carolina has separate attempt crimes, which are synonymous with 846. And then it has distribution crimes, which are synonymous with 841. And I think that this court is astute and prudent to be looking at the connectivity and really the identical nature between the definition of distribute and delivery in Section 802. South Carolina defines it. Because this court in Alexander in 2017 recognized that South Carolina defines distribute and delivery identically, essentially, as the United States Code does in 841. I think the Supreme Court, I mean, the Court of Appeals decision in Brown did the same thing. I think they fully recognized the definition and actually applied it instead of countering it. In other words, the definitional language in the South Carolina provision is identical to the federal. And they applied it. They did not suggest that it meant anything else. Yes, sir, Your Honor. If the court would allow, I'll read it. There was two ounces sold. Four ounces was at the scene. Two ounces sold. And the court went and interpreted the statute exactly as it was written, rather than contravening or overruling the statute in any way. Yes, sir, Your Honor. I agree. In the Brown case, the court talks about how distribute is defined as to deliver, and deliver and delivery are defined as the actual constructive or attempted transfer of a controlled substance. Then it says the line that Mr. Thompson likes to point out, that thus no completed sale is required to constitute a distribution. Rather, attempted delivery is a distribution. However, in the two paragraphs later, as it's giving this fulsome review of the South Carolina law, it says the criminal act of attempting to transfer the four ounces of crack cocaine a delivery under the act, which in turn was a distribution of the four ounces at that time. What Brown is undeniably clear on is that possession with intent to distribute was merging with the actual completed crime of distribution. And the South Carolina Court of Appeals viewed an attempted transfer as a completed delivery, which is a completed distribution. Well, it's consistent with the statute and the federal statute. Yes, sir, Your Honor. And that's a completed distribution, which is a controlled substance offense. One thing else, and Your Honors, please feel free to cut me off at any time. But you see no reason to hold this for Groves. I've got a question I want to ask about an issue that hasn't been approached at all, Judge Wilkinson, just briefly. Yes, sir, Your Honor, and Judge Wilkinson, I do not believe that this court needs to wait until Groves, but I do believe that if the Fourth Circuit were to find that 841 is a controlled substance offense, that should influence this court's determination here because South Carolina has the exact same definitions of distribute and delivery. Your Honor? The Rule 106 of the Evidence Rule on the telephone call from the jail, you all put an isolated part of that conversation into the government's case, and then there was an argument about whether there was something else that needed to go in there. The part that you put in, you deemed, of course, you being the prosecutor, seemed to be inculpatory. Yes, sir. And the defense wanted some other part to come in under the Completeness Rule. Yes, sir. And Judge Lewis ruled in your favor on it. That Rule 106 talks about if there's something else in the statement that, in fairness, ought to come in at the same time, then it goes in at the same time. Yes, sir. You all relied on, I suspect, Hassan and Lentz and cases like that for the proposition that you didn't have to put it in. But why not, under the fairness provision of the Rule, did you not have to put it in? If you're going to pull out a squib that you argue is inculpatory, why wouldn't you have to, in fairness, let the jury know that there's another statement in there that's arguably exculpatory in that connection? The government has an obligation to be fair. Yes, sir, Your Honor, we do. And when we approached that, we didn't take it lightly. Your Honor, we did rely and do rely on the Hassan and Lentz and Wilkerson cases regarding how 106 does not expand enough to allow inadmissible self-serving hearsay in. Your Honor, but a statement of a defendant that the government offers is not hearsay. There's no hearsay problem at all. It's defined out of hearsay. That's what I'm talking about. Sir, Your Honor. And you defined it out of hearsay by offering the squib that you put in. And if you put the other part in, too, it would not be hearsay. It would be offered by you against him. He's the speaker. Yes, sir, Your Honor, but 106 would make us. 106 says, in fairness, ought to come in. Yes, sir, and, Your Honor, this is why I believe that fairness did not dictate that. Your Honor, in the fairness considerations, I think that this Court's going to be looking at was there any need to clarify or explain that statement, and then was it necessary to provide context. Your Honor, the statement that Mr. Davis That's a common law complaint, this Court. Yes, sir, Your Honor. Basically. Yes, sir, Your Honor. The statement that Mr. Davis wanted in was essentially from minute mark 425 to 430. The statement that the government introduced in was from 610 to 626,  Those numbers relate to minutes of the tape or something? Yes, sir. Okay. It sounds like code to me here. No, sir, Your Honor, it's minutes. 623 to 626. So it was roughly two minutes apart. I admire your knowledge of it, the detail, but go ahead. Thank you, Your Honor. I just wrote it down. And, Your Honor, on that phone call, he's talking to a female that he's got a close relationship with, and they're talking about the penalties that he's facing. So he talks in 425 to 430, he says, None of that was mine. If it was mine, I would have claimed it. And he talks about ownership, and he's conflating ownership with possession. And then from 430 to 610, he talks about how he's looking at a 15-year penalty because of the 922G and him being an armed career criminal. He talks about what he's going to look like in 15 years and whether this girl will still be attracted to him in 15 years. And then he goes back, there's a slight pause, and he goes back and says, Shoot, I don't even want to talk about how the gun got in the car. Your Honor, they had completely changed subjects. That statement in and of itself, I don't want to talk about how the gun got in the car, was really not capable of confusion and didn't need any more clarity. I also thought about this, Your Honor. Had he said, I don't want to talk about how the gun got in the car, I just found out that my brother put it in there to hide it from my mom, that's a situation in which the government would have been presenting an isolated statement that did not present the entire context of the statement. Now, does that statement of the government present the entire context of the conversation? No, but it doesn't need to be explained any further. And I think the other important thing in this case, Your Honor, to remember, and the government cites this at footnote one in its brief, is that, and Your Honors, I realize that I'm over time. Could I please finish my explanation? You may. Thank you, Your Honor. Is that upon arrest, Mr. Davis told the officer, the officer asked him, why were you running? And he said, because the gun's hot. That statement was excluded in evidence because the district court believed that Mr. Davis was in custody and had it been read as Miranda rights. But the whole key there is, Your Honor, is we were not misleading the jury. All of the evidence in this case indicated that Mr. Davis knew that gun was in the car. But those two statements, you introduced one of them, and the other one, they're both on the same telephone call. They're both on the same telephone call. And you picked the one that you thought was the worst for him, because you were entitled to do it. And the other one, arguably, was bad for him, too, I think, but they thought it was exculpatory. And I just didn't understand why that rule of fairness doesn't kick in. You were obliged, you the government, to put them both in and let the jury see the evidence. Well, Your Honor, you lost the part of his clearly inculpatory statement when he was running, after he was running. Yes, sir. Anyway, but that's aside, you all haven't argued that at all. I brought that up myself. I was interested in that issue. I was on the Hassan case. Yes, sir. And I was on the Lentz case. Yes, sir. Your Honor, I guess I just thought that with the primary factor of fairness being are we misleading the jury, are we leading the jury to a conclusion that doesn't speak the truth, or are we confusing the jury? The truth was he always knew that gun was in the car, and I think we also risked the possibility of confusing the jury. Well, that was the issue. You say the truth was he always knew it was in the car, but the issue was whether he knew it was in the car, because you had to prove the offense. Yes, sir, Your Honor. The circumstance was it was down between the seats. Yes, sir, Your Honor. Between the seat and the console. Yes, sir, Your Honor. And one final thing is that I think that Mr. Davis in those statements, it possibly risked confusing the jury because it could conflate ownership with possession, which constructive possession does not require Mr. Davis to have owned that gun. He says, I didn't, it wasn't mine. He didn't say, I didn't know it was there, I didn't possess it. He says, it wasn't mine, and I think that risked confusing the jury. Tom, if there are no further questions, I'll sit down. Thank you so much. All right. Thank you, sir. Mr. Thompson, be happy to hear from you in rebuttal. I'm going to just address a couple of points made by opposing counsel regarding Campbell. That the parties agreed in the same way that the parties agreed in Havis that West Virginia distribution was, or West Virginia delivery, excuse me, was categorically incoherent. I don't believe the parties agreed that an attempt to transfer meant an attempt to deliver in the same ways that the parties had, which was eventually undone by the Sixth Circuit in Miller. So I don't believe that that statement is correct and that this court can disregard the attempt to transfer, meaning attempt to deliver, holding from Campbell on that basis. Additionally, with regard to Campbell, Campbell did not cite to any decision of the West Virginia courts in making its holding. Campbell said an attempt to transfer is an attempt to deliver. And, in fact, this court in Dozier had previously held attempted. There was a case of attempted distribution under West Virginia law had held that that was a controlled substance offense, but that did not later bar this court in Campbell from concluding that the court was incoherent because it prohibited an attempt to transfer. Let me just say one thing. I think that maybe you would agree at least to this extent that the law in this particular area about what's an attempt and what's an incoherent claim and what's a completed claim is becoming almost impossibly Byzantine, where we are splitting hairs too thin to be split. And I'm wondering if you're holding that an attempted transfer is we have two circuits out there already saying that an attempted transfer is a completed delivery. And now we're coming in and you're asking us to hold that, no, this is, after all, an attempt crime. And so at least on the face of it, there seems to be some inconsistency with what the Sixth Circuit and the Third Circuit are doing. And you can say, well, the one was a state case and the one was a federal case and so forth. But when you look at the definition in 53.110, it says in the South Carolina delivery means the actual construction or attempted transfer. So if we say notwithstanding that language that an attempted transfer is still incoherent, aren't we just adding to the morass and the confusion that's already out there? It seems to me if we hope that an attempted transfer is as the Second and Third, as the Third and Sixth Circuit held, if we hope that an attempted transfer is a completed delivery, that will at least have the virtue of having the three courts of appeals ruling on the thing, as I see it, to be in accord. And that might actually be a small step in contributing to the coherence of this whole area. I have two points to make to that, Your Honor. The first is to note that we're already in conflict with the Sixth Circuit because of Campbell. And the government made similar arguments regarding North Carolina distribution and delivery offenses in Locklear, and this court, again, reaffirmed Campbell. Now, that's an unpublished decision, but it didn't need to be published. Campbell already made the holding that attempted transfer means attempted delivery, and thus the offense was categorically inchoate. And this panel, respectfully, cannot overrule Campbell. This court sitting on Bonk can, if this court believes this is incoherent. Why would we be overruling Campbell if it says delivery means the attempted transfer? That seems to equate an attempted transfer with a completed delivery. Your Honor, I see I'm out of time, if I may respond. Go ahead. That is the exact language at issue in Campbell. Campbell held that an attempt to transfer was an inchoate offense. So the language in South Carolina is immaterially indistinguishable from that in West Virginia. We also have Brown, so we actually have an attempt crime being prosecuted as a substantive distribution. Doesn't Campbell address attempted commission of the crime distribution, a controlled substance offense? Whereas when you get into the offense, they don't say it's an attempt. They say it's an actual distribution because it's an attempted transfer, which is different from an attempt to do the offense. In other words, it seems to me that the statute of itself eliminates, determines that there's an actual delivery when there's an attempted transfer. It doesn't say attempted delivery. It says attempted transfer is a delivery because that's the definition, both in South Carolina and in the feds. Your Honor, but if you look to Campbell, and this is at 22 Fed 4th at 442, it says, this is talking about West Virginia statute, the statute further provides that deliver means the actual constructive or attempted transfer, attempted in italics, from one person to another of controlled substances or imitation or counterfeit controlled substances. The very next sentence is, in other words, the least culpable conduct criminalized by the West Virginia statute is an attempt to deliver a controlled substance. So this court has already held- The attempt to deliver is different from deliver, right? Attempt to deliver. That's what Campbell latched on. Attempt to deliver is different from deliver. But an actual delivery includes, definitionally, an attempted transfer. Your Honor, his conviction, Mr. Campbell's prior conviction, 22 Fed 4th at 441, is a West Virginia conviction for delivery of crack cocaine. It's substantive delivery, and this court held substantive delivery categorically is inchoate under this statute. Our statute is indistinguishable from that statute, and not only is it indistinguishable, South Carolina has interpreted attempted transfer to mean attempted distribution and attempted delivery. So distribution is categorically inchoate. The second point I wanted to make, Your Honor, is that with regard to Judge Wilkinson, your question about how Byzantine this is getting, I believe the United States Sentencing Commission is meeting today and tomorrow to discuss how to fix the guidelines to correct this problem in light of this court's decision in Campbell, in light of Havis, in light of Miller, in light of what the Third Circuit has done, in light of the Eleventh Circuit's en banc decision in Dupree a couple of months ago. I believe the Sentencing Commission is going to fix this problem. This is going to be a short-lived issue. But as it stands right now, this court's decision in Campbell should be controlling of this court's ruling in this case because the statutes are indistinguishable. And yet the South Carolina statute defines deliver or delivery. It doesn't talk about defining attempted delivery or attempted something. It says deliver, which must mean not an inchoate. That's not an inchoate concept. It must mean a completed delivery. And you say a completed delivery means an attempted transfer. All these things are deliveries, not attempted deliveries, not inchoate crimes, but deliveries. And attempted transfer, the statute equates them. It says an attempted transfer is a delivery. It's a completed delivery. I mean, how can we look at that statute and get anything else out of it? That is what this court has already done in Campbell and in Locklear. The exact same statute, the exact same language, has held twice that it is categorically inchoate. And it says attempt. It's an attempted offense. And South Carolina law says a distribution is an attempted delivery, categorically. It is an inchoate offense. And there is no evidence, and the government doesn't cite to it because they can't. There is no evidence that South Carolina actually prosecutes attempted delivery crimes or attempted distribution crimes. They prosecute them as substantive crimes because categorically they can, and they do. Well, I was told to look at the text of statutes, but perhaps that's an outmoded view. Your Honor, again, as I said earlier, I think common sense has left the building when it comes to the categorical approach. This is where we're at. This is the law. Well, maybe common sense has left the building. You know, that's a sad commentary, but I'm not sure the textual analysis of a statute has left the building. At any rate, let me ask my colleagues if they have further questions. Judge Niemeyer, do you have any? I'm fine, thank you. Judge King, do you have further questions? I'm fine. All right, we thank you very much, sir. Thank you. We will. Judge Wilkinson, with your permission, we'd like to step down in the well of the court and resume our greeting of counsel. I agree with that. I think that sounds fine.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King